<div style="margin-left:auto">Goodridge<br>v.<br>Rogers.</div>

On the other hand, the penalty for committing trespasses in the night time, and penalties provided for a vast number of offences, including many which are merely *mala prohibita*, are evidently intended to come within the limitation.

This was so understood in the case of *Woodgate* v. *Knatchbull*, 2 T. R. 154, where *Ashhurst* J. observed, " that where a statute gives accumulative damages to the party grieved, *it is not a penal action* ; for in penal actions no costs are allowed, but if the action be brought by the party grieved, he is entitled to costs." And in a note to that case, it is said, ·that it has been held " that an action given by statute to the party grieved, is not within 31 *Eliz.* c. 5, which limits the bringing of actions on penal statutes."

Thus we all think, that both grounds of defence have failed and that the defendant must be defaulted.

---

## Aaron Brooks Junior *versus* Samuel Daniels.

On the trial of an action to recover a fine imposed by the sentence of a court-martial, the original record of the court-martial, whether it ought or ought not to be permitted to be taken from the adjutant-general's office, is nevertheless, if produced, as good evidence, at least, as a certified copy would be.

Whether the imposition of a pecuniary penalty by a militia court-martial be constitutional, (there being no jury,) *quære.*

Whether it be competent to a party who is to be tried by a militia court-martial, to waive the objection that a member of the court was not by law the proper officer to be detailed to serve as a member, *quære.*

After the judge advocate and the members of a court-martial had been sworn, the party to be tried submitted to them a paper, in which he says, " that not objecting to the members personally, nevertheless he does object to the detailing thereof, and challenges as follows, — that it doth not appear, otherwise than by the return of Brig. Gen. J. D. to the order of Maj. Gen. A. S. G, that Lt. Col. A. R., a member of this court, hath been duly detailed to that place, whereas the prosecutor ought to show affirmatively, that said detail is agreeable to the brigade roster ; and the respondent further shows, that said detail, and the orders therefor, and the execution thereof, are in other respects illegal and void." It was *held*, that this was a sufficient challenge, or if too general, that this objection to it should have been taken at the trial before the court-martial.

On a case stated it appeared, that this was an action of debt to recover a fine of 75 dollars imposed upon the defend· ant by the sentence of a court-martial.

<div style="float:right">Brooks
<br>v.
<br>Daniels.</div>

The plaintiff's evidence consisted of the records of the court-martial, the competency of which was denied by the defendant, because the original record, after it had been returned to the office of the adjutant-general, was sent by him to the plaintiff and remained out of the office more than six months before it was sent back.

The record shows an order from Major-General Gibbs, of the 6th division, to Brigadier-General Day, of the 1st brigade of the same division, directing him to detail from the roster of his brigade two lieutenant-colonels and one major to serve on the court-martial, and directing him to cause an order to be issued to Col. Wilson of the 4th regiment, to detail one captain from that regiment. Upon this order of the major-general, Brig. Gen. Day returned, " Pursuant to the above order I have detailed from my roster Lt. Col. Apollos Rich, of &c., Lt. Col. Hunt, of &c., Maj. Abel B. Bliss, of &c., as members for the court-martial above named, &c. Capt. Frederic Davis, of Dudley, of the 4th regiment, has also been detailed as a member of said court, and duly notified &c." On the order from Brig. Gen. Day to Col. Wilson, a return was made by Wilson, that he had detailed from his roster Capt. Frederic Davis.

The president, together with Rich, Hunt and Davis, appeared and sat as members of the court. Bliss did not appear, nor does the record show any reason for his absence. It was admitted, that at the time of the major-general's order and until after the execution of it, E. Howe was the senior lieutenant-colonel, and P. W. Taft, the senior major, in the 1st brigade, and that L. Whittemore was the senior captain in the 4th regiment, neither of whom had served on a court-martial.

After the judge advocate and the members of the court had been sworn, the defendant submitted to them a paper as follows : — " On court-martial at Worcester, February 22d, 1838. And now the respondent, not objecting to the members of this honorable court-martial personally, nevertheless he does object to the detailing thereof, and challenges as follows, — That it doth not appear, otherwise than by the return of Brig. Gen. Jonathan Day to the order of Maj. Gen. Aaron S Gibbs, that Lt. Col. Apollos Rich, a member of this hon-

Brooks
*v.*
Daniels.

orable court, hath been duly detailed to that place, whereas the said prosecutor ought to show here affirmatively, that said detail is agreeable to the brigade roster of said first brigade ; and the respondent further shows, that said detail and the orders therefor and the execution thereof, are in other respects illegal and void." The paper contained similar challenges to the detailing of Hunt and Davis. Upon the presentation of this paper, " the president and the members of the court, other than Lt. Col. Apollos Rich, took into consideration the objection made to the evidence introduced of the detail of said Rich, and ruled that the objection was not sustained in regard to Lt. Col. Rich ; " and in like manner, *mutatis mutandis*, the court ruled in regard to Hunt and Davis.

Objections were made to the proceedings of the court, which it is unnecessary to state.

*Oct. 3d.*    *Brooks*, pro se, cited Revised Stat. c. 12, § 118, (*p.* 132).

*Washburn*, for the defendant, cited to the point, that the original record was not competent evidence, because it ought not to have been suffered to go out of the adjutant-general's office, Revised Stat. c. 12, § 118, (*p.* 133) ; *Adamthwaite* v. *Synge*, 1 Stark. R. 183.

*Oct. 5th.*    MORTON J. delivered the opinion of the Court. Several objections to the proceedings of the court-martial, have been made ; but as one of them shows a fatal defect in the organization of the court, we shall confine ourselves principally to the examination of that.

There can be no doubt of the competency of the original record. A copy of it verified by the adjutant-general's certificate, or otherwise proved, is admissible. But it is only secondary evidence. And although the record of a court-martial is required to be transmitted " to the adjutant-general's office, to be kept and preserved," yet there can be no doubt that, if produced, it is at least as good evidence as a copy of it. Whether it was proper for the adjutant-general to suffer it to be taken from his office, is not our province to determine. But we have no hesitancy in deciding that when brought into court and offered in evidence, it was the duty of the court to admit it. Revised Stat. c. 12, § 118.

Without adverting to the several formal objections made to

the proceeding of this court-martial, it is apparent that there was an extraordinary degree of irregularity in the detail of the court, a majority of whom were selected without regard to military principle or usage. The defendant therefore was tried by judges who had no legal authority to sit on his trial. This is admitted, and the only question is, whether he has by his management of his defence, waived the objection and cured the illegality.

The principles which govern cases of this kind, are stated and explained in *Brooks* v. *Adams*, 11 Pick. 442 ; *Brooks* v. *Davis*, 17 Pick. 148 ; *Wise* v. *Withers*, 3 Cranch, 331, and *Mills* v. *Martin*, 19 Johns. R. 7. This was not only a court of limited and special jurisdiction, expiring with the occasion which called it into existence, but vested with powers heretofore unknown in military tribunals, and of extraordinary and unusual character for such tribunals to exercise. The assessment of pecuniary penalties, the rendition of a judgment which should take from a man his property, would seem, according to the fundamental principles of our government and of the common law, to require, in some form or other, the interposition of a jury. It assuredly is a novelty to find a court-martial dealing with mulcts and forfeitures, or a common law court sustaining an action upon the sentence of a court-martial. The creative power of legislation may require the performance of these anomalous duties. But the law will not look upon their exercise with much complacency, nor raise any presumptions in favor of their legality.

In *Brooks* v. *Davis*, 17 Pick. 148, the Court doubted whether an illegality of detail was the subject of waiver ; and it may well be questioned whether the neglect of one of the parties or the agreement of both, can give authority to a man having no legal appointment, to sit as judge. It is now conceded by the plaintiff, that under the statutes then in force, the present objection would be fatal. But he places his whole reliance upon a clause of the 118th section of the 12th chapter of the Revised Statutes, in which it is provided, that " any illegality or irregularity in the detail of any member of the court, shall be good cause of challenge ; but shall be considered as waived, unless the objection to the detail be taken at the time and in

the manner aforesaid." Whether this was intended to be confined to informalities and technical errors, or to extend to more radical illegalities, may be doubtful. To hold that a return, by accident or design, of a number of persons who were not officers, to serve on a court-martial, might be made valid and the individuals converted into a legal court, by any act of the parties, would be trenching deeply upon established principles. And to say that a capricious selection of officers without regard to the roster, could be made a regular detail by the neglect of the defendant to challenge, would be giving great potency to the doctrine of waiver. Again, the principles of waiver are founded upon notice, express or implied. How can a man be said to waive a defect or error of which he was ignorant ? It would make the statute very arbitrary to construe it so as to bind a party by a waiver of certain defects of which he neither had notice nor the means of obtaining notice. But we have no need to investigate these points, for we are satisfied that the challenge was sufficient to preserve to the defendant all his legal rights. It must not be forgotten, that the defect or illegality said to be waived, is a substantial one ; that the challenge is looked upon with no jealousy or disfavor ; that, in a proceding of this nature, the formalities and niceties of a special plea are not required ; and that as the object of the waiver, like that of estoppel, is to shut out the truth and cure radical infirmities, a liberal construction should be given to acts by which it is to be defeated.

The defendant made no personal objection to the members of the court, as individuals, but did object to the detailing of them, because it did not appear from any evidence, other than the return of the detailing officer, that the detail was regular ; whereas he contended that the burden was upon the prosecutor to prove affirmatively that the detail was correct. The challenge thus far appears to be confined to the return and the absence of other proof. But in conclusion it says, " *that said detail and the orders thereof, and the execution thereof, are, in other respects, illegal and void.*" This clearly contains a general allegation, that the detail was illegal. But it is contended by the plaintiff, that this challenge is too general, and therefore inoperative to prevent the waiver. But his own doctrine may

be retorted upon him, and it may be said that this objection should have been made on the trial, and that it is now too late for the plaintiff to make it.

Under all the circumstances, we think the challenge was sufficient. It is perfectly clear that the defendant did not intend to admit that the detail was correct, or to waive any objections which he had a right to make. He had no means of knowing whether the detailing officers did their duty correctly or not If he had been shown the rosters, he could not have ascer tained it. He manifestly intended to make his challenge broad enough to cover all illegalities which might exist, although he was uninformed of them. "Illegality in the detail" did exist. The defendant made "objection to the detail," "at the time and in the manner" required by the statute. And although his objection was general and not so particular as he, doubtless, would have made it, if he had been correctly informed of the errors which had been committed, yet we think it is sufficient to save him from the statute waiver.

*Plaintiff nonsuit.*